# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Black Dash Camera<br>Seizure No. 2024250600058401-0007 | Case No. **24-mj-03717** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the __Southern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952, 960 | Importation of a Controlled Substance |

The application is based on these facts:
See attached affidavit

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*
Mauricio Duran, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephone__ *(specify reliable electronic means)*.

Date: September 30, 2024

*Judge's signature*

City and state: San Diego, California          Hon. Steve B. Chu, United States Magistrate Judge
*Printed name and title*

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

>Black Dash Camera
>Seizure No. 2024250600058401-0007
>("**Target Device**")

The **Target Device** is currently in the possession of Homeland Security Investigations, located at 880 Front Street, Suite 3200, San Diego, California 92101.

**ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the **Target Device** described in Attachment A includes the search of disks, memory cards, SIM cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in **Target Device** for evidence described below. The seizure and search of the **Target Device** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Device** will be electronic records, communications, data from third-party applications, photographs, audio files, videos, and location data, for the period of July 23, 2024, up to and including August 23, 2024:

a. tending to indicate efforts to import controlled substances from Mexico into the United States to include locations, dates, and times;
b. tending to identify accounts, facilities, storage devices, and/or services-such as email addresses, IP addresses, and phone numbers-used to facilitate the importation of controlled substances from Mexico into the United States;
c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;
d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;
e. tending to identify the user of, or persons with control over or access to, the vehicle used for importation of controlled substances;
f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.

# AFFIDAVIT

I, Special Agent Mauricio Duran, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

> Black Dash Camera
> Seizure No. 2024250600058401-0007

("**Target Device**")

as further described in Attachment A, for subscriber information and global positioning system location data from August 9, 2024, up to and including August 23, 2024. There is probable cause that these records and information constitute evidence of violations of federal criminal law, to wit, Title 21, United States Code, Sections 952, 960, as described in Attachment B. This affidavit and application are sought pursuant to Rule 41 of the Federal Rules of Criminal Procedure. The requested warrant relates to the investigation and prosecution of Ramses Alejandro PADILLA DE LA LUZ ("PADILLA") for importing approximately 51.96 kilograms (114.55 pounds) of methamphetamine from Mexico into the United States. The **Target Device** is currently in the custody of Homeland Security Investigations and located at 880 Front Street, Suite 3200, San Diego, California 92101.

## BACKGROUND

2. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since August of 2017. I am currently assigned to the HSI Office of the Special Agent in Charge, in San Diego, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

3. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational

habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

4. I am aware that a common tactic utilized by drug traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of controlled substances in vehicles, I am aware that traffickers in Mexico frequently utilize multiple vehicles to transport controlled substances from their origination in Mexico to their final destination in the United States. Oftentimes traffickers transport the controlled substances to a location near the international border in Mexico, and then transfer them into a vehicle for crossing into the United States. Once inside the United States these vehicles can sometimes stop just over the border to transfer the controlled substances to another vehicle, or they can drive further into the interior of the United States prior to unloading them. Drug traffickers will use the same vehicle and driver on multiple occasions if they are successful in crossing controlled substances on the first occasion.

5. Based upon my training, experience in law enforcement, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that electronic devices, such as a dash mounted camera ("dashcam") can and often do contain electronic evidence, including, for example, data from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the dashcam. Specifically, searches of dashcams and memory devices of individuals involved in the importation of narcotics may yield evidence:

   a. tending to indicate efforts to import controlled substances from Mexico into the United States to include locations, dates, and times;

   b. tending to identify accounts, facilities, storage devices, and/or services-such as email addresses, IP addresses, and phone numbers-used to facilitate the

       importation of controlled substances from Mexico into the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

   d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the vehicle used for importation of controlled substances;

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

6. On August 23, 2024, at approximately 11:20 AM, Ramses Alejandro PADILLA DE LA LUZ ("PADILLA"), a Mexican national, applied for entry into the United States from Mexico through the Otay Mesa Port of Entry in vehicle lane #8. PADILLA was the driver, and registered owner of a 2024 Kia K3 ("the vehicle") bearing Mexico license plates.

7. A Customs and Border Protection Officer ("CBPO") received a negative Customs declaration from PADILLA. PADILLA indicated that he was crossing the border to go to San Diego, California. The CBPO inspected the vehicle and had PADILLA open the trunk of the vehicle. The CBPO inspected the trunk area of the vehicle and discovered clear vacuum sealed packages hidden within the quarter panel. The vehicle was sent to secondary inspection and PADILLA was escorted to the Security Office.

8. A CBPO operating the Z-Portal X-Ray machine detected anomalies in the front and rear quarter panels, passenger and driver side rear doors, rear seats, and dashboard of the vehicle.

9. A Canine Enforcement Team was conducting secondary inspection operations when the Human and Narcotics Detection Dog alerted to the passenger side quarter panel of the vehicle.

10. Further inspection of the vehicle resulted in the discovery of 110 total packages with a total approximate weight of 51.96 kilograms (114.55 pounds). A sample of the substance contained within the packages field tested positive for the characteristics of methamphetamines.

11. PADILLA was placed under arrest at approximately 11:45 AM and charged with a violation of Title 21, United States Code, 952 and 960, Unlawful Importation of a Controlled Substance.

12. The **Target Device** was found inside the vehicle during secondary inspection and seized.

13. Based on my training and experience, and my consultation with other law enforcement officers who have analyzed dashcams, I believe the **Target Device** may contain evidence including, but not limited to, photographs, audio files, videos, and location data. Memory cards or other storage media in the **Target Device** may also contain information such as phone numbers and email addresses, depending on what they were used for and if they were previously connected to other devices.

14. In light of the above facts and my experience and training, there is probable cause to believe that the **Target Device** contains information associated with the movement of PADILLA's vehicle in both the United States and Mexico. Further, in my training and experience, drug traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. It is unknown how long PADILLA was involved in importing controlled substances. It is not unusual for individuals, such as PADILLA, to attempt to minimize the amount of time they were

involved in their drug smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Device** for data beginning on July 23, 2024, up to and including August 23, 2024.

## METHODOLOGY

15. It is not possible to determine, merely by knowing the dashcam's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Many dashcams store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some dashcam models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

16. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

17. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

18. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

19. Based on the foregoing, I request that the Court issue the proposed search warrants for the **Target Device**, pursuant to Federal Rule of Criminal Procedure 41. Based upon my training and experience, consultation with other law enforcement officers experienced in controlled substances importation investigations, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that the **Target Device**, as described in Attachment A, will contain evidence of the importation of controlled substances, as set forth in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Mauricio Duran*
Special Agent Mauricio Duran
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this  30th  day of September, 2024.

Honorable Steve B. Chu
United States Magistrate Judge